WILLIAM F. CAMERON, et al., Respondents, *v.* ROBERT SEAMAN, et al., Appellants.

The fact that a stockholder of a manufacturing or mining corporation was elected a trustee, does not alone invest him with that character so as to make him liable for the debts of the corporation because of a failure to make and file an annual report as required by the general manufacturing act (§ 12, chap. 40, Laws of 1848) ; there must have been acceptance of the office on his part, either express or to be implied from circumstances.

To meet the requirements of said act it is not necessary that the annual report shall be published and filed within twenty days from the first of January ; when the report is prepared, signed and verified within that time, and is filed and published as soon as practicable thereafter, it is sufficient. (FOLGER and RAPALLO, JJ., dissenting.)

Accordingly *held* (FOLGER and RAPALLO, JJ., dissenting), where a report was signed and verified on the 20th of January, and was on the same day mailed to the county clerk, by whom it was received and filed on

the 22d, and a copy was also mailed on the 21st to a newspaper, and was published therein on the 24th, that this was a sufficient compliance with the statute.

Under the provision of said act (§ 12), requiring that in case no newspaper is published in the town, city or village where the business of the corporation is carried on, the annual report shall be published "in some newspaper published nearest the place " of business, where the business is carried on in a town, the town is the "place" of business within the meaning of the act; and publication in a newspaper published nearer to a point in the town than any other newspaper is to the same point, is a substantial compliance with the requirement, although such other newspaper may be published nearer to some other point in the town. (*Cameron* v. *Seaman*, 7 Hun, 601,) reversed.

(Argued April 13, 1877; decided April 24, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury. (Reported below 7 Hun., 601.)

This action was brought by plaintiffs as creditors of the Shenandoah Mining Company ,a corporation organized under the general manufacturing act (chap. 40, Laws of 1848), against defendants as trustees of said corporation, to recover the debt due from the corporation because of alleged failure to file and publish the annual report for the year 1874.

The facts sufficiently appear in the opinion.

*Samuel Hand,* for the appellants. There was a substantial compliance with the requirement of the statute as to filing the reports, so far as the trustees were concerned. (*Sturgis* v. *Mailland,* Authon's N. P., 208.) No report was necessary in January, 1875. (*Garrison* v. *Howe,* 17 N. Y., 458; id., 93; 19 J. R., 456; 8 Cow., 387.) There was no ground for a recovery against defendant, Henry A. Seaman, as a trustee. (*Sanborn* v. *Lefferts,* 16 Abb. [N. S.], 54; *Craw* v. *Easterly,* 54 N. Y., 679; *Chandler* v. *Hoag,* 3 Hun, 613; *Shaler Quarry Co.* v. *Bliss,* 27 N. Y., 297; *Garrison* v. *Howe,* 17 id., 458; *Boughton* v. *Otis,* 21 id., 261.)

*C. F. Brown*, for the respondents. The defendant, Henry A. Seaman, was a trustee in January, 1875. (*Nimmons* v. *Tappan*, 2 Swe., 652; A. & A. on Corp., §§ 137, 138, 352, 433, 434; *Fulton Bank* v. *N. Y. & Sharon Canal Co.*, 4 Paige, 136.) The trustees failed to file and publish a report as required by law. (Chap. 40, Laws 1848, § 12; *McHarg* v. *Eastman*, 4 Robt., 635; *Oswego Starch Co.* v. *Dalloway*, 19 N. Y., 408; *West. Tr. Co.* v. *Scheu*, 21 id., 453; *Whitney Arms Co.* v. *Barlow*, 6 J. & S., 554.) This failure of the trustees rendered them jointly and severally. liable for all debts of the company then existing. (*Garrison* v. *Howe*, 17 N. Y., 458; *Shaler Quarry Co.* v. *Bliss*, 27 id., 297; *Boughton* v. *Otis*, 21 id., 261; *Deming* v. *Pulleston*, 55 id., 655; *Jones* v. *Barlow*, 62 id., 202; *McHarg* v. *Eastman*, 7 Robt., 137; *Shaler Quarry Co.* v. *Brewster*, 10 Abb. Pr., 467; *Miller* v. *White*, 8 Abb. Pr. [N. S.], 55.)

ANDREWS, J. It is claimed on the part of the defendant Henry A. Seaman, that he was not a trustee of the " Shenandoah Mining Company," and is not therefore liable for the debts of the company, assuming that there was a failure to make the annual reports required by the twelfth section of the act of February 17th, 1848, under which the company was organized. This claim, if well founded, is a complete defence to the action, so far as Henry A. Seaman is concerned. and this point will be first considered. It is claimed that he became a trustee by virtue of the election held September 11th, 1874. There was no election of trustees at the annual meeting of the stockholders in June of that year. The by-laws, however, provided for a subsequent election in case the election was not held at the annual meeting, and so far as appears the election in September was regular.

The defendant, Henry A. Seaman, was a stockholder of the company, and otherwise qualified to be elected trustee, and by virtue of his election was entitled to hold the office. But the fact that he was elected a trustee did not alone invest him with the character of trustee, so as to charge him with

the duties and responsibilities of the office. There must in addition have been an acceptance on his part of the office to which he was elected. He was not bound to accept the position. He did not by becoming a stockholder in the corporation undertake to act as trustee if elected. It was not necessary that the defendant should by a direct and positive act assent to the action of the stockholders. His acceptance could be shown by conduct on his part indicating an intention to accept the office, and might be implied from circumstances. In this case there is nothing to show such an intention, and the circumstances proved are inconsistent with the theory that he accepted the office. He was not present at the election. Before the election was held the property of the company had been sold on a foreclosure. There was remaining after the sale an unpaid indebtedness of more than $50,000, and no assets with which to pay it. The business of the company was suspended, and although the corporation as a legal entity still had an existence, it was practically dissolved. The secretary of the stockholders' meeting, who was also the president of the company, testified that after the election he notified by letter the persons elected as trustees, of their election. The defendant, Henry A. Seaman, testified that he never received any written notification of his election, and that the only notice he had was an oral communication made to him by the president of the company, and that he then told him he should not serve. There is no denial of the testimony in respect to this conversation. He never acted as trustee, and the trustees elected in September, 1874, so far as appears never met, and in January, 1875, the board of trustees elected in 1873, claiming to hold over, made, filed and published a report in assumed compliance with the twelfth section of the act of 1848. The learned judge before whom the cause was tried found that the defendant, Henry A. Seaman, was a trustee of the company in January, 1875, and rendered judgment against him on the ground that the company had not complied with the statute in making the annual report for that year, and

that thereby the defendant became liable for the debt due to the plaintiff from the company. We are of opinion that there is no evidence to sustain the finding that Henry A. Seaman was a trustee of the company in January, 1875, and that the judgment against him should for that reason be reversed.

The liability of the defendant, Robert Seaman, is claimed upon other and distinct grounds. He was elected a trustee at the annual election in 1873, and was re-elected in September, 1874, and acted as trustee under the first election. The debt due to the plaintiff from the company was contracted in 1873. The trustees in January, 1874, prepared the annual report containing a statement of the facts required to be stated therein by the 12th section of the act of 1848, and on the 20th of January of that year the report was signed by the president and a majority of the trustees of the company and verified by the president. On the same day it was sent by mail to the clerk of Dutchess county at Poughkeepsie to be filed. The clerk received and filed it on the 22d of January. The trustees also on the 21st of January sent a copy of the report by mail to the "Poughkeepsie Eagle," a newspaper published at Poughkeepsie, for publication, and it was published therein on the 24th of January. From these facts it appears that the report was prepared, signed and verified within twenty days from the first of January, 1874, was mailed to the clerk of the county on the same day, but was not filed until the next day, and was first published on the 24th of January. It is contended on the part of the plaintiff that by the true construction of the 12th section of the act, the filing and publication of the report must be done within twenty days from the first day of January in each year, and that it is not sufficient that it is prepared, signed and verified within that time, and filed and published as soon as practicable thereafter. The 12th section is as follows: "Every such company shall annually, within twenty days from the first day of January, make a report, which shall be published in some newspaper published in the town, city

or village, or if there be no newspaper published in said town, city or village, then in some newspaper published nearest the place where the business of the company is carried on, which report shall state the amount of capital, and of the proportion actually paid in, and the amount of its existing debts, which report shall be signed by the president and a majority of the trustees, and shall be verified by the oath of the president or secretary of said company, and filed in the office of the clerk of the county where the business of the company shall be carried on; and if any of said companies shall fail to do so, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made."

The question is, must the report be filed and published within the twenty days from the first of January in order to meet the requirements of this section. The statute must have a fair and reasonable interpretation, and effect must be given to it according to the intention of the legislature as indicated in the language used. The language is not to be wrested from its true meaning to protect trustees against liability, however serious, to which they may be exposed; and on the other hand, the statute being in the nature of a penal statute, is to be strictly construed, and cannot be extended beyond the clear import of its language. (Smith on Statutory and Constitutional Construction, 854; *Garrison* v. *Howe*, 17 N. Y., 458; *Verona Co.* v. *Murtaugh*, 50 N. Y., 314.)

The general purpose of the section is clear, viz.: to provide authentic information to creditors of the company, and those who might have dealings with it, of its financial condition at fixed recurring periods, so as to enable them to act intelligently in their transactions with the corporation. That this object would be accomplished by requiring a report to be prepared within the time limited in the statute, and filed and published as soon as practicable thereafter, as well as by requiring the several acts of mailing, filing and publishing the report to be performed within the twenty days, cannot

be seriously doubted. The language is that the company "shall annually, within twenty days from the first day of January, make a report," and then follows a direction that it shall be published, etc. The publication necessarily is an act to be done after the making of the report previously mentioned, and so also is the filing. To make a report may mean either the preparation of the report simply, by the person or body charged with the duty, or it may, in addition, include the act of presenting or communicating it to the person or body to whom the information contained in it is to be given. We are of opinion that the words "make a report" in this section, refer to the preparation, signing and verification of the report, and that the limitation of twenty days does not apply to the acts of filing or publication. The statute intended to give the company twenty days after the first day of January, in each year, to make up their accounts, and prepare the statement to be embodied in the report. If the publication and filing must be also made within the twenty days in order to protect the trustees from personal liability, very serious burdens might be imposed upon them, without their fault. The neglect of a newspaper to publish the report, although it was furnished for publication within the twenty days, and in due time for insertion in its regular issue, would not protect the trustees against the statute liability. They would be made upon the construction of the statute contended for, liable for the neglect of persons over whose conduct they had no control. If the company prepare the report within the time limited, and cause it to be filed, and published as soon thereafter as practicable, there is, we think, a compliance with the statute. The law implies in the absence of an express provision on the subject, that the filing and publication must be within a reasonable time after the twenty days, and this requirement, in view of the object of the statute, could only be satisfied by prompt performance and diligent action on the part of the trustees. We are of opinion, therefore, that the defendant, Robert Seaman, is not liable, by reason of the omission to

file and publish the report within twenty days, from the first day of January, 1874.

There is an independent ground upon which the liability of this defendant is claimed, viz: that the " Poughkeepsie Eagle," in which the report was published, was not a newspaper published nearest to the town of East Fishkill, where the mines of the company were located, and which was the place named in the certificate in which the operations of the company were to be carried on.   There was no newspaper published in the town of East Fishkill, and the company were therefore required by the statute to publish the report, " in some newspaper published nearest the place where the business of the company was carried on."   This place within the meaning of the statute was the *town* of East Fishkill.   There was a newspaper published in the village of Fishkill, in the town of Fishkill, which adjoined the town of East Fishkill.   Fishkill village was nearer the mine than Poughkeepsie, but as I understand the evidence, one part of the town of East Fishkill was nearer to Poughkeepsie than was Fishkill village from the same point.   Under these circumstances, a publication in either paper would be a substantial compliance with the statute.   Fishkill village was nearer to one point of the town of East Fishkill than Poughkeepsie, while Poughkeepsie was nearer to another point than Fishkill village.

The report made in January, 1875, was made by the trustees elected in 1873.   If they held over for any reason, they were the persons whose duty it was to make it.   If they did not hold over, no duty rested upon the defendant Robert Seaman, as one of the trustees elected in 1874, for there is no evidence that he accepted the office under that election.

The judgment should be reversed and a new trial granted.

All concur, except Folger and Rapallo, J.J., who dissent from the result as to defendant Robert Seaman, on the ground that the manufacturing act requires the report to be not only made, but also filed and published within twenty days from January first of each year.

Judgment reversed.